# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

Gwendolyn Caranchini,
                Plaintiff,

v.                                                   No. 4:19-CV-00030-DGK

Rick Peck
                Defendant

## Defendant Rick Pecks' Reply to Plaintiff's Opposition Doc. 31

The defendant Rick Peck replies to the plaintiff's opposition (Doc. 31) regarding the defendant's motion to strike (Doc. 22)

The plaintiff exerts a great amount of energy using the phrase "court bias" or combinations thereof. Having demeaned the Court and its objectivity, Caranchini has bile to spare towards counsel of Mr. Peck (even addressing in the first person). Caranchini's mind-numbing and irrelevant uses of the word "lying" and other derogatory statements mean little coming from a disbarred attorney – the point being her words are more her therapy than anything to do with advancing any coherent legal argument as to why Kansas law should not apply. According to Caranchini, the sound of Caranchini's own voice is sufficient legal authority for this Court to rule in her favor.

Rather than facts, Caranchini asserts that the force of her own experience and her thus elevated legal conclusions must prevail. After all she claims, she filed the lawsuit in Missouri and it follows that Missouri law applies. To the untrained in legal matters this would have appeal. But that is not what a law school student in first year civil procedure would understand as a "choice of law" analysis. This Court sits in Missouri, and Missouri follows the "`most significant relationship' test from the Restatement (Second) of Conflict

1

of Laws § 145 for resolving choice-of-law questions in tort actions." *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012).

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to that occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>   (a) the place where the injury occurred,
>
>   (b) the place where the conduct causing the injury occurred,
>
>   (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
>   (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

After a court identifies the type and number of contacts under Section 145, Missouri requires those contacts to be considered under the perspective of the choice-of-law principles set forth in Section 6(2) of the Restatement (Second) of Conflicts of Laws. *See Natalini v. Little,* 185 S.W.3d 239, 251 (Mo.Ct.App.2006). The alleged injury of distress occurred in either Kansas (court proceedings and incarceration) or Missouri (where Mr. Peck terminated the relationship) (or both). Similarly, the conduct purportedly causing this distress occurred was in both states. Plaintiff resides in Missouri. Defendant resides in Kansas. Depending on the timeline, the parties' relationship (or lack of relationship) was centered in Kansas and Missouri. "Missouri choice of law rules dictate that the place where the act takes harmful effect or produces the result complained of is the more significant

contact" in determining the location of the injury." *Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 797 (8th Cir.1990). From the complaint and Caranchini's response, Caranchini ascribes a great significance to judicial proceedings in Johnson County Kansas and her related incarceration there.

Admittedly, the Court must divine from the plaintiff's prolix and rambling complaint what *facts* the plaintiff is actually alleging that give rise to her claims of emotional distress. The plaintiff's opposition does scant little to identify any underlying facts that purportedly support what the defendant Rick Peck actually did or did not do that inflicted any emotional distress upon Caranchini. As to the facts, Caranchini does continue to allege that Mr. Peck "lied" to obtain a Kansas Protection from Abuse Order – the same factual allegation Caranchini made in the Kansas federal litigation which was stricken.[1] Caranchini again refers to her incarceration in Kansas and states "Any 'reasonable person' listening to Caranchini's statements regarding what happened to her physically and mentally would recognize what she suffered and will enter punitive damages against all the defendants for what they caused." Doc. 31, p. 25. But these claims were also made in the Kansas federal litigation which were dismissed. These are all factual claims about Mr. Peck's right to petition the court, right to speech, and right to associate.

Caranchini continues her general complaint that Mr. Peck could not terminate the prior relationship. Terminating an illicit romantic relationship is not "extreme and outrageous" conduct. *See Roberts v. Saylor*, 230 Kan. 289, 292-93, 637 P.2d 1175 (1981)

---

[1] Doc. 31, p. 18 ("Mr. Peck does not have a right under Missouri law or any state's law, to INTENTIONALLY LIE AND CLAIM IT IS AN EXERCISE OF HIS "FREE SPEECH" RIGHTS.") Of course, Caranchini is wrong as those communications are privileged under Kansas law as the Kansas Federal court so ruled.

(the Court determines as a matter of law whether defendant's conduct may reasonably be regarded as so extreme and outrageous that recovery is warranted).

"Conduct is extreme and outrageous when it goes beyond the bounds of decency and is utterly intolerable in a civilized society." *S. Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F.Supp.2d 1257, 1263-64 (D. Kan. 2010). And even if the mere act of ending a romantic illicit relationship was "utterly intolerable" Caranchini's claimed distress was not "extreme and severe." "Elevated fright, continuing concern, embarrassment, worry, and nervousness are inadequate" and "irritability, anxiety, depression, [and] listlessness" are not sufficient emotions to meet the requirements of intentional infliction of emotional distress. *Valadez v. Emmis Commc'ns,* 290 Kan. 472, 229 P.3d 389, 395 (2010).

Missouri law is similar. *See Polk v. Inroads/St. Louis, Inc.,* 951 S.W.2d 646, 648 (Mo. Ct. App. 1997) ("Although case law does not provide us with a precise definition of extreme and outrageous, the test adopted by Missouri courts for actionable conduct is that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") Additionally, the conduct must be "intended *only* to causes extreme emotional distress to the victim." *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997). *See* Doc. 19 Court's March 25, 2019 prior ruling ("True, a majority of the conduct related to Plaintiff's claim of intentional infliction of emotional distress—Peck's refusal to speak with Plaintiff—occurred in Kansas, and therefore, under choice of law principles, it is likely Kansas law will apply. But Missouri law will likely apply to Plaintiff's negligent infliction claim, since the breakup occurred in Missouri.")

**Three Miles and Different Outcomes**

If Kansas law applies then it follows that the Kansas anti-slapp statute also applies. The Court is faced with a novel question in whether to apply the Kansas anti-slapp statute. As the Kansas Federal court recognized, the statute is substantive law. Thus the question is whether a substantive outcome should be based upon the act of removing the case from Missouri state court to Federal. That is, a Missouri state court would apply the Kansas anti-slapp statute upon application of Kansas law. Kansas state courts, as well as Kansas Federal courts, apply the Kansas anti-slapp statute. It would be a great anomaly that a disparity in outcomes would result simply because the case was removed from a Missouri state court to a federal court sitting in Missouri. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398 (2010) (Stevens, J., concurring in part and concurring in the judgment). Failure to apply Kansas state law would lead to different outcomes in Kansas and Missouri state and Kansas Federal courts and "result in inequitable administration of the laws or forum shopping." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

In a diversity action the court applies the substantive law of the forum state. *See Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002). "Federal courts sitting in diversity cases, when deciding questions of `substantive' law, are bound by state court decisions as well as state statutes." *Hanna at* 465. This Court applies an outcome-determination test. *See Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 237-38 (E.D. Mo. 2004) (Erie "applies equally in the context of pendent jurisdiction over supplemental state law claims," with the goal of ensuring "that the outcome of the litigation in federal court will be substantially the same as if the case were being tried in state court"); *See In re Baycol Products Litigation*, 616 F.3d 778, 785 (8th Cir. 2010) (recognizing outcome-terminative

5

test "in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.")

Caranchini should not obtain a different outcome as to a "to a courthouse that is only three miles from" this Court. *See* Doc. 19. Failing to enforce the Kansas state statute distorts Kansas law and "would lead to different measures of the substantive rights enforced in state and federal courts, contrary to *Erie's* command." *Racher v. Westlake Nursing Home Limited Partnership*, No. 16-6011 (10th Cir. September 28, 2017). The Court referred to the location of the Kansas Federal court being a mere three miles away in denying transfer. If the Court applies Kansas law but then refuses to apply the Kansas anti-slapp statute in conjunction with the application of Kansas law, this not only creates different outcomes but alters Kansas law. The Court can reconsider its denial of transfer if the Court rules that the Kansas anti-slapp statute will not apply in this Court the interests of justice and for all the reasons stated herein.

By /s/ Linus L. Baker
Linus L. Baker  MO 44980
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:   913.486.3913
Fax:               913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for Rick Peck Defendant

Certificate of Service

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Missouri, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons.

/s/Linus L. Baker